**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ian Day, | No. CV-22-00177-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| City of Phoenix, an Arizona municipality, | |
| The City. | |

Plaintiff Ian Day asserts a free speech retaliation claim against Defendant City of Phoenix pursuant to 42 U.S.C. § 1983. Doc. 26. The City has filed a motion for summary judgment. Doc. 77. The motion is fully briefed, and the Court heard oral argument on October 16, 2023. For the reasons stated below, the Court will grant the City's motion.

**I.  Background.**

In 2015, Plaintiff was hired by the City as a water quality inspector in the Water Services Department ("WSD"). Doc. 26 ¶ 26. Between 2015 and 2018 Plaintiff received positive performance evaluations and was eventually promoted to senior water quality inspector. Doc. 74 ¶¶ 11-16.

In February 2019, a WSD employee emailed then-HR Supervisor Donna Love regarding an incident of harassment by Plaintiff at AZ Water, a professional organization. *Id.* ¶ 17. An HR Representative and Plaintiff's third-line supervisor met with Plaintiff to

1

 
y
z

discuss the matter. *Id.* ¶¶ 7, 17. More concerns about Plaintiff's behavior at AZ Water were expressed to City employees between February and April of 2019. *Id.* ¶¶ 19-21.

In late 2018 and early 2019, Plaintiff began raising his concerns that WSD's Environmental Services Division was not adequately addressing environmental contamination of City stormwater drains. Doc. 26 ¶¶ 29-36. In March 2019, Plaintiff alerted supervisors within WSD about concerns regarding a facility he had inspected. Doc. 74 ¶¶ 22-25.

On May 6, 2019, Plaintiff was issued a coaching memo by his supervisor about his behavior at AZ Water. *Id.* ¶ 27. On May 16, 2019, Plaintiff filed a grievance regarding the coaching memo. *Id.* ¶ 28. The same day, Plaintiff submitted a similar complaint to the City's Integrity Line Commission ("ILC"). *Id.* ¶ 29.

In June 2019, Plaintiff sent emails to the Arizona Department of Environmental Quality – an agency of the State of Arizona – outlining his concerns about the City's stormwater permitting process. *Id.* ¶ 35. In October 2019, Plaintiff met with State House Representative Athena Salman to discuss his concerns about environmental and public health risks going uncorrected by WSD. *Id.* ¶ 45. Plaintiff provided Ms. Salman with a packet of confidential documents meant to support his claims. *Id.*

The same month, City Manager Ed Zuercher received the packet disclosed to Representative Salman through the Mayor's Chief of Staff. *Id.* ¶ 47. Zuercher referred the matter to the ILC. On October 25, 2019, a complaint was opened regarding disclosure of the packet. *Id.* ¶¶ 47-48.

On June 30, 2020, Plaintiff emailed Zuercher and identified himself as the person who gave the packet to Representative Salman. *Id.* ¶ 62. Plaintiff sent several follow-up emails to Zuercher detailing his allegations and issues with his supervisors. *Id.* ¶¶ 65-69. On July 9, 2020, Zuercher emailed Plaintiff and explained that he was retaining an attorney to do an outside investigation of Plaintiff's complaints. *Id.* ¶ 70.

Multiple complaints about Plaintiff's conduct in the workplace, including allegations of harassment and insubordination, were made throughout 2019 and 2020. *Id.*

¶¶ 19-24. The City provided further verbal and written coaching to Plaintiff, including a memo of expectations, a performance improvement plan, a performance review, a written reprimand, an 8-hour suspension, and eventually a cease-and-desist notice. *Id.* ¶¶ 18, 27, 41-42, 56, 77, 79.

On March 21, 2021, Eric Froberg, Interim Director of WSD, issued a Pre-Termination memo to Plaintiff. *Id.* ¶ 80. On April 2, 2021, Froberg issued a notice of termination to Plaintiff. *Id.* ¶ 82. On April 3, 2021, Plaintiff emailed Zuercher informing him that he had been terminated. *Id.* ¶ 83. Plaintiff appealed his termination to the City's Civil Service Board, but it was upheld by the Board. *Id.* ¶¶ 84, 89, 90.

Plaintiff alleges that the City retaliated against him beginning in September 2019 for reporting concerns about potential unaddressed environmental hazards to outside individuals and entities. Plaintiff asserts a claim against the City for violation of his First Amendment rights under 42 U.S.C. § 1983. Doc. 26 ¶ 175.

**II.     Summary Judgment Standard.**

Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.    Discussion.**

    **A.     Municipal Liability.**

Municipalities like the City are considered persons under § 1983 and may be liable for causing a constitutional deprivation. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). But

a municipality "cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under [§ 1983] under a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *see Ulrich v. City & Cnty. of S.F.*, 308 F.3d 968, 984 (9th Cir. 2002) (same).

The Supreme Court has provided several guiding principles for determining when a city can be held liable under § 1983:

> First, . . . municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered.  Second, only those municipal officials who have final policymaking authority may by their actions subject the government to § 1983 liability.  Third, whether a particular official has final policymaking authority is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (cleaned up).

Applying these principles, courts have held that when a person with final policymaking authority is responsible for even an isolated constitutional violation, that single instance may suffice to establish a municipal "policy." *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  Thus, the City may be liable under § 1983 for Plaintiff's termination if it was made by a final city policymaker and violated Plaintiff's constitutional rights.  A key question, therefore, is whether Plaintiff was terminated by a city official with final policymaking authority.

The parties agree that Zuercher is a final policymaker for the City.  They also agree, however, that Froberg – not Zuercher – terminated Plaintiff.  Docs. 26 ¶ 166; 77 at 7; 80 at 14.  Plaintiff argues that the City is liable for Froberg's actions because Zuercher either (1) delegated his final policymaking authority to Froberg or (2) ratified Froberg's decision. Doc. 80 at 14.  The Court will address these two theories separately.

/ / /

/ / /

**1.      Delegation of Final Authority.**

"Authority to make municipal policy may be . . . delegated by an official who possesses such authority[.]" *Praprotnik*, 485 U.S at 124.  A court must determine whether the policymakers have merely delegated discretion to act, or whether they have delegated final policymaking authority. *Christie*, 176 F.3d at 1236.  The Supreme Court has provided this guidance on delegation:

> When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality.  Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies.  If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Praprotnik*, 485 U.S. at 127.

Applying this guidance, the Court concludes that Froberg was not delegated final policymaking authority because his termination of Plaintiff was subject to review and approval by both Zuercher and the Civil Service Board.

Phoenix Code § 37-2 specifically states that Froberg's decisions as acting director of WSD are subject to review and approval by City Manager Zuercher:

> The [WSD] Director is the general executive officer of the Department and is in charge of all operations, personnel, equipment and facilities of the Department. . . .  The Director will establish, administer and supervise rules, policies, procedures and agreements consistent with this chapter.  The Director will recommend and administer water and sewer service charges and fees.  *At all times, the Director's actions are subject to approval of the City Manager*.

Doc. 26 ¶ 24 (emphasis added).

Employment decisions of the WSD Director are also reviewable by the City's Civil Service Board.  Under the City charter, the Board has the authority to review disciplinary actions by the WSD Director.  Doc. 79-1 at 43-44.  Indeed, in this case the parties agree

5

that the Board did review and uphold Plaintiff's termination by Froberg. Doc. 74 ¶ 90; *see also* Doc. 76-2 at 33-34.

The Supreme Court has made clear that "when a subordinate's decision is subject to review by the municipality's authorized policymakers, *they* have retained the authority to measure the official's conduct for conformance with their policies" and the subordinate's decision is not that of a final policymaker. *Praprotnik*, 485 U.S. at 127 (emphasis added); *see also Lytle v. Carl*, 382 F.3d 978, 985 (9th Cir. 2004) (supervisor was final policymaker because "the Board did not review discipline of individual employees such as Lytle, and did not retain the authority to review such discipline"); *Chung v. Cnty. of Santa Clara*, No. 21-CV-07583-WHO, 2022 WL 6768204 at *5 (N.D. Cal. Oct. 11, 2022) (county entity had the ability to overturn the employment decisions of the district attorney, and the district attorney therefore did not have final policymaking authority).

Plaintiff points to the testimony of both Zuercher and Froberg to support his claim that Froberg had final policymaking authority. Doc. 80 at 16. Zuercher gave the following testimony:

> Q. Mr. Zuercher, who had ultimate authority to fire Ian Day?
>
> A. Well, the responsibility for that decision-making was with the Water Services Director. And so that's – that was the authority to fire.

Doc. 79-1 at 52.

Mr. Froberg provided this testimony while reviewing his final termination notice to Plaintiff:

> Q. What does that mean that you would have signed that and that the City Manager delegated it to you?
>
> A. That generally means that the City Manager allows department heads to run their own departments as they see fit, right, from hirings, firings, in this case terminations. So, in this case, Mr. Zuercher, now Mr. Barton, they delegate that responsibility to the department heads.

*Id.* at 75.

6

1    This testimony confirms that Zuercher authorized Froberg to make termination
2 decisions as Froberg saw fit, but says nothing about Zuercher's authority to review those
3 decisions as provided in Phoenix Code § 37-2, or about the Civil Service Board's authority
4 to review Froberg's decision as happened in this case.  Because this review authority is
5 undisputed and eliminates Froberg as a final policymaker under Supreme Court precedent,
6 the Court finds that Froberg was not a final policymaker and his action in terminating
7 Plaintiff cannot be used to establish the City's liability under § 1983.  *See Chung*, 2022
8 WL 6768204 at *5 (finding that testimony of the decision-maker that he oversaw
9 operations and set policy did "not overcome the dispositive language of the County
10 Charter"); *Molex v. City & Cnty. of S.F.*, No. 11-CV-01282-YGR, 2012 WL 3042256 (N.D.
11 Cal. July 25, 2012), *aff'd*, 586 F. App'x 292 (9th Cir. 2014) (finding no delegation though
12 the decisionmaker called herself a designee because evidence showed that her decisions
13 were reviewed by her superior).  Nor does Zuercher's knowledge of Plaintiff's situation
14 show that he delegated final policymaking authority to Froberg.  *See Praprotnik*, 485 U.S.
15 at 130 ("Simply going along with discretionary decisions made by one's subordinates,
16 however, is not a delegation to them of the authority to make policy.").

17    Plaintiff cites *Hyland v. Wonder*, 117 F.3d 405 (9th Cir. 1997), in support of his
18 argument.  That case found that San Francisco superior court judges had delegated final
19 policymaking authority over volunteer personnel decisions to the Chief Juvenile Probation
20 Officer.  Because the city charter did not specify who had policymaking authority over
21 hiring and firing volunteers, the court relied on testimony indicating that the judges made
22 no employment policy and left the internal management of the probation department to the
23 chief.  *Id.* at 414.  The court disregarded language in the city charter giving review power
24 to both the judges and the civil service system because the language applied only to
25 employees, not to volunteers.  *Id.* at 415.  In this case, the City Manager and Civil Service
26 Board's authority to review Plaintiff's termination by Froberg is clear and undisputed.

27    Plaintiff's reliance on *Menotti v. City of Seattle*, 409 F.3d 1113 (9th Cir. 2005), is
28 similarly misplaced.  That case found a dispute of fact as to whether the Mayor of Seattle

7

had delegated final policymaking authority regarding a city emergency order to the police chief. The mayor testified that he relied on the police to carry out the order in question. *Id.* at 1147. Unlike this case, there was no clear city-code language retaining review authority.

Plaintiff cites the termination notice itself as showing that Froberg had authority to sign on behalf of Zuercher. *See* Doc. 75-6 at 10 (Froberg signed termination notice for "City Manager (delegated to Dept. Head)"). Plaintiff claims that this signature block creates a factual dispute about whether Froberg was a final policymaker. Doc. 80 at 16. But Froberg's authority to sign on behalf of the City Manager is established through City Code § 2-5(A), which allows the City Manager to "delegate to a specific administrative officer the right and power to stamp the name and position of the City Manager . . . which shall have the same force and effect as though the City Manager had, in person and by his own act, signed the document or paper." Doc. 26 ¶ 17. The fact that administrators could sign on behalf of the City Manager, in a city with thousands of employees, does not show that the administrators were given final policymaking authority. Section 2-5(A) provides that Froberg can sign for Zuercher, not that his decision is final and unreviewable by Zuercher or the Civil Service Board. *See Molex*, 2012 WL 3042256 at *15 (signing of a dismissal letter "for" a final policymaker did not create an issue of triable fact).

The Court concludes that the review power of Zuercher under Phoenix Code § 37-2, and of the Civil Service Board under the City charter, establish as a matter of law that Froberg was not delegated final policymaking authority to terminate Plaintiff. The City's § 1983 liability therefore cannot be established by Plaintiff's delegation theory.

### 2. Ratification.

A municipality may be liable for a single constitutional violation if the final policymaker "ratified a subordinate's actions." *Christie* 176 F.3d at 1238. To show ratification, a plaintiff must prove that the authorized decisionmaker both knew the basis for their subordinate's decision and approved the decision: "If the authorized policymakers

approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Praprotnik*, 485 U.S. at 127.

In alleging that Zuercher ratified Froberg's decision to terminate him, Plaintiff notes that Zuercher: (1) hired an independent attorney to investigate Plaintiff's allegations and requested that the attorney report directly to him; (2) knew Plaintiff was the whistleblower who provided the confidential documents to Representative Salman; and (3) failed to respond to Plaintiff's email informing him of the termination. Doc. 80 at 15. Plaintiff also cites deposition testimony from Froberg suggesting that Zuercher was aware of plans to terminate Plaintiff prior to the termination. *Id.*; Doc. 79 ¶ 166.

This evidence may be sufficient for a reasonable jury to find that Zuercher knew about Plaintiff's employment issues, whistleblowing activity, and termination, but it is not sufficient for a jury to find that Zuercher actually approved Froberg's termination decision. The only affirmative act by Zuercher is the hiring of an attorney to investigate Plaintiff's environmental concerns. Doc. 80 at 15. The attorney was retained to investigate Plaintiff's claims of non-compliance within WSD. Doc. 75-5 at 79. The hiring of the attorney was not the same action as Plaintiff's termination. Nor does Zuercher's failure to respond to Plaintiff's post-termination email support Plaintiff's theory of ratification. The Ninth Circuit has made clear that "a mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle*, 382 F.3d at 987.

For summary judgment to be denied, "there must be evidence on which the jury could reasonably find for the plaintiff." 477 U.S. at 252. Zuercher's approval of Froberg's termination decision is necessary for Plaintiff's ratification claim, and Plaintiff has presented no evidence from which a jury could reasonably find that Zuercher not only knew of Plaintiff's termination but actually approved it. *See Blackman v. Omak Sch. Dist.*, 466 F. Supp. 3d 1172, 1191 (E.D. Wash. 2020) (evidence that a policymaker was notified of the employment decision insufficient to support ratification).

/ / /

/ / /

**B.   Motion to Strike.**

On September 22, 2023, the City filed a reply in support of its summary judgment motion and an additional statement of facts. Docs. 86, 87. The Local Rules of Civil Procedure do not permit a reply statement of facts. *See* LRCiv 56.1(b). The Court will grant the Plaintiff's motion to strike.

**IT IS ORDERED:**

1. The City's motion for summary judgment (Doc. 77) is **granted**.
2. Plaintiff's motion to strike (Doc. 88) is **granted**.
3. The Clerk of Court shall enter judgment in favor of the City and terminate this action.

Dated this 25th day of October, 2023.

_David G. Campbell_
David G. Campbell
Senior United States District Judge